

8160 NORTON PARKWAY   THIRD FLOOR   MENTOR, OHIO  44060

RACHEL BUSSETT
RBUSSETT@DICELLOLEVITT.COM
440.953.8888

December 16, 2024

**BY ECF AND EMAIL**
Hon. Katherine Polk Failla
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

    Re: *Seedath v. Baldeo*, No. 22-CV-917 (KPF)

Dear Judge Failla:

  In accordance with the order entered in the above-captioned matter on November 15, 2024, ECF Dkt 58, we respectfully submit this joint letter motion on behalf of Plaintiff and with the consent of Defendants (Plaintiff and Defendants, collectively, the "Parties") seeking approval of the Parties' negotiated settlement agreement (attached hereto as Exhibit A) ("the Agreement") pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), as a fair and reasonable resolution of Plaintiff's Fair Labor Standards Act ("FLSA") claims.

  On February 2, 2022, Plaintiff Beni Seedath filed a complaint against Defendant Philip Baldeo alleging Forced Labor in violation of 18 USC §1589 and §1595, Involuntary Servitude in violation of 18 USC §1584 and §1595, Benefitting Financially from Trafficking in Persons in violation of 18 USC §§1593A and §1595, Failure to Pay Federal Minimum Wage in Violation of the FLSA, 29 USC §206 and §216, Fraud, and Assault and Battery. Defendant Dr. Baldeo denied all allegations.

  The parties engaged in extensive paper discovery and produced numerous documents. Included were some of the records related to the prosecution of Dr. Baldeo which related to terms different than what Plaintiff initially believed when the case was filed. Included with the documents produced were certain handwritten contracts between the parties and proof of payments to Mr. Seedath. Pursuant to the terms of the handwritten contracts, Mr. Seedath would be an independent contractor and not an employee as

originally plead in the Complaint. Additionally, Mr. Seedath received in kind payments in lieu of cash compensation, through room and board at Dr. Baldeo's building where Mr. Seedath was working. While there is a dispute about whether Dr. Baldeo paid Mr. Seedath all the money agreed to under the contract, there is evidence of more money having been paid than previously believed at the time the suit was filed. Additionally, Mr. Seedath is unable to produce certain witnesses to substantiate the allegations that he made payments out of the funds paid to him as he has alleged. Further, Mr. Seedath allegedly made payments in cash, lacks proof of payment, and does not know how to obtain banking records of the individuals who are believed to be undocumented workers. These factors together made it doubtful that Plaintiff would likely prevail on his FLSA claim and that it would be difficult to show that he had not received the payments due to him under the contract. Therefore, the parties jointly agreed that the FLSA claims should be dismissed. Had this case proceeded Plaintiff, would have sought to conform the pleadings to the evidence which would be to proceed on a common law breach of contract claim rather than a FLSA claim.

As to the remaining claims there is a dispute about what led to the circumstances that caused Mr. Seedath to be ejected from the apartment and Dr. Baldeo to terminate the contract agreement. Mr. Seedath admits that he was allowed to come and go from the building and visit his family members when he desired. However, he also claims he was under constant threat and fear of intimidation, arrest, and deportation from Dr. Baldeo. Dr. Baldeo denies making such threats and intimidation as a means to force Plaintiff to work. Dr. Baldeo claims that Mr. Seedath was using his building for illegal activities which exposed him to risk and liability. Dr. Baldeo alleges that he threatened to contact the police and ultimately ejected Mr. Seedath because of the illegal behavior as well as Mr. Seedath's failure to perform all of the work he contracted to perform. Both parties recognized that it was likely they would not be able to produce all necessary independent witnesses to verify their claims for trial, making it very difficult for either side to resolve the matter in their favor.

With these facts and circumstances in mind, and in order to avoid the legal and factual risks of further litigation, the Parties were able to reach a resolution of the Plaintiff's claims in this action for the agreed-upon settlement amount of $50,000,[1] inclusive of all damages, counsel fees and costs. Of the total settlement amount, $19,860.38 is payable to Plaintiff's counsel as attorneys' fees and costs (consisting of $16,666.67 in attorneys' fees and $3,193.71 in costs, as outlined below), while the remaining $30,139.62 is payable directly to Plaintiff. The settlement is the result of arm's-length negotiation between the Parties, in which both sides were represented by counsel with extensive litigation experience with Plaintiff's counsel focusing on employment related litigation. The Agreement reflects a fair and reasonable settlement to compensate Plaintiff for his alleged violations and is not the product of overreaching.

---

[1] The Parties request the Court's permission to file this with the ECF system with the amounts of the settlement redacted.

In light of the contested factual and legal disputes, Plaintiff believes that the settlement is reasonable, as Defendants' documentation clearly established that Plaintiff entered into an arm's length contract and was not an employee entitled to be paid minimum wage.

There is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F.Supp.2d 362, 365 (S.D.N.Y. 2013) (*quoting Crabtree v. Volkert, Inc.*, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013)). "In considering whether a settlement is fair and reasonable, the principal question is 'whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Id*. (*quoting Le v. SITA Info. Networking Computing USA, Inc.*, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)). Courts consider factors including "(1) the Plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v Scholastic Inc.*, 900 F Supp 2d 332, 335 (SDNY 2012) (*quoting Medley v. Am. Cancer Soc.*, No. 10-cv-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

The settlement will enable the parties to avoid anticipated burdens and expenses in establishing respective claims and defenses through further litigation and at trial. This settlement is the result of arm's-length negotiation. Plaintiff was represented by counsel throughout this lawsuit and made an informed decision to settle the action, without incurring the costs or encumbrance of trial. There is no possibility of fraud or collusion as the Parties settled only after the production and review of substantial documentation by Defendant followed by extensive negotiations through their respective counsel.

Given the Parties' respective positions and arguments, the settlement presents a fair recovery for Plaintiff. Pursuant to the Agreement, Plaintiff will receive $30,139.62 after deduction of Plaintiff's counsel fees and costs from the total settlement amount. Given the good faith factual and legal disputes between the Parties, such a recovery is well within the range of reasonableness warranting approval of the Agreement.

A court may approve a settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. Sita Information Networking Computing USA, Inc.*, No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (*quoting Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

The Agreement also complies with the requirements set forth in *Cheeks* and prevailing Second Circuit case law that has developed since. Because counsel for Plaintiff believes that a FLSA claim would have been converted to a breach of contract claim upon a motion conforming the pleadings to the evidence, Plaintiff agreed to a full release of claims and confidentiality provisions that would otherwise be present in a breach of contract case over a FLSA dispute.

### PLAINTIFF'S ATTORNEYS' FEES ARE FAIR AND REASONABLE

Pursuant to the Agreement, Plaintiff's counsel will receive $19,860.38 in attorneys' fees and costs, which represents one-third (33%) of the total recovery in this settlement, plus costs. Counsel has reduced its normal contract attorney fee percentage from a forty percent (40%) fee to a fee to a one-third (33 & 1/3%) fee which is fair and reasonable and well within the range of fees typically awarded to attorneys in cases in this Circuit. "Courts in this district typically approve fee requests of one-third of the total settlement amount." *Williams v Arqenta Inc.*, 2018 US Dist. LEXIS 212914, at *6 (SDNY Aug. 10, 2018) (*citing Thornhill v. CVS Pharmacy, Inc.*, No. 13 Civ. 5507, 2014 U.S. Dist. LEXIS 37007, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 14, 2014) (collecting cases)); *see also Himrod v Cygnus Med., LLC*, 2020 US Dist. LEXIS 502, at *7 (SDNY Jan. 2, 2020) (*citing Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 U.S. Dist. LEXIS 166890, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015)); *see also Antonio Alonso, Plaintiff, v. Le Bilboquet NY, LLC, et al.*, No. 16-CV-8448 (JMF), 2017 WL 445145, at *1 (S.D.N.Y. Feb. 1, 2017) (Granting plaintiff's attorney one-third of the settlement amount wherein "it is consistent with a commonly approved percentage, there are no opt-in plaintiffs, the case is not a collective action, and the attorney's fee award is based on an agreement between Plaintiff and counsel")(internal citations omitted); *See Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit"); *Alvarez v Sterling Portfolio Inv. L.P.*, 2017 US Dist. LEXIS 206043, at *16 (E.D.N.Y. Dec. 13, 2017) (one-third attorney fee is typical with no requirement for a lodestar cross check).

The amount sought by Plaintiff's counsel under this settlement is fair and reasonable and well within the range of fees typically awarded in this Circuit. *See Pinzon v. Jony Food Corp.*, No. 18-CV-105(RA), 2018 U.S. Dist. LEXIS 87424 (S.D.N.Y. May 24, 2018) (awarding a third, or 5.23 times the lodestar, in an early settlement and "recognizing the importance of encouraging the swift resolution of cases like this one and avoiding 'creat[ing] a disincentive to early settlement'—particularly where such settlement has provided Plaintiff with a substantial and speedy result." (*quoting Hyun v. Ippudo USA Holdings et al.*, No. 14-CV-8706 (AJN), 2016 U.S. Dist. LEXIS 39115, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016).; *Shapiro v. JPMorgan Chase & Co.*, No. 11-CV-7961 (CM), 2014 U.S. Dist. LEXIS 37872, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 21, 2014) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District."); *Castaneda v. My Belly's Playlist LLC,* No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the plaintiff's attorneys a contingency fee of one-third to account for risks in litigation); *see also Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist.

LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."). Counsel for Plaintiff tracked their hours for this case and the lodestar attorneys' fees far exceeds the contingency award in this case.

For the purposes of this settlement, Defendants take no position with respect to Plaintiff's counsel's request for attorneys' fees. In light of the nature of the issues herein and the extensive negotiations necessary to reach the agreed-upon settlement and given Plaintiff's counsel's significant experience representing clients in employment litigation, Plaintiff's counsel was able to obtain a favorable pre-trial result following the Parties' cooperative exchange of information and extensive negotiations. Accordingly, Plaintiff's counsel submits that the attorneys' fees component of the settlement is fair and reasonable.

## CONCLUSION

In full consideration of the issues presented in both *Cheeks* and *Wolinsky,* we believe that the Parties' Agreement is fair and reasonable and that the settlement should be approved and the case dismissed with prejudice, with the Court retaining jurisdiction over the settlement for purposes of enforcement of the Agreement.

We thank the Court for its time and attention to this matter.

Sincerely,

Rachel Bussett
Counsel for Beni Seedath

Enclosures Settlement Agreement

Cc (and with review and consent):
    Richard W. Levitt, Esq.
    Nicholas Kaizer, Esq.
    Zachary Siegel, Esq.
    Levitt and Kaizer
    Counsel for Defendant Philip Baldeo